**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

RALPH BUCK PHILLIPS,

                                          Plaintiff,

                v.                                                    9:12-CV-0609
                                                                      (NAM/CFH)
T. LAVALLEY, <u>et. al.</u>,

                                          Defendant.

_____

**APPEARANCES:**                            **OF COUNSEL:**

RALPH BUCK PHILLIPS
Plaintiff Pro Se
06-B-3437
Clinton Prison
Post Office Box 2001
Dannemora, New York 12929

ERIC T. SCHNEIDERMAN                         RICHARD LOMBARDO, ESQ.
Attorney General for the                     Assistant Attorney General
    State of New York
Attorney for the Defendant
The Capitol
Albany, New York 12224-0341

**Christian F. Hummel**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

      Plaintiff pro se Ralph Buck Phillips, ("Phillips"), an inmate in the custody of the New York

State Department of Corrections and Community Services ("DOCCS"), brings this action

pursuant to 42 U.S.C. § 1983 alleging that the defendants, all employees of Clinton

Correctional Facility, violated his constitutional rights under the First and Eighth

Amendments.  Compl. (Dkt. No. 1).  Presently pending is defendants' motion to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6) as to all claims against all defendants.  Dkt. No. 33.

Phillips has not responded to the motion.  For the following reasons, it is recommended that defendants' motion be granted in part denied in part.

## I. Background

According to the lengthy and at times confusing complaint, Plaintiff Phillips claims to have experienced a multitude of constitutional violations while he was housed at Clinton Correctional Facility (hereinafter "Clinton"). The facts are related herein in the light most favorable to Phillips as the non-moving party.  <u>See</u> subsection II(A) <u>infra</u>.

### 1.LaValley

In the 4th Cause of Action, Defendant Lavalley is accused of denying Plaintiff use of ear plugs for a "serious medical need."  As a result, Plaintiff is constantly deprived of any restful sleep and fails to experience peace at any time.  Defendant LaValley allegedly did this in a "malicious context" because he is aware of the excessive noise.  Compl. ¶¶ 20-21.

In the 9th Cause of Action, Plaintiff claims he filed a grievance against LaValley which caused him to retaliate against Plaintiff and take photos off the Plaintiff's cell wall, which Plaintiff was previously allowed to have.  Compl. ¶¶ 44-45.

### 2. Allan

The 3rd and 21st Causes of Action accuse Defendant Allan of tampering with Plaintiff's legal mail.  Compl. ¶¶ 17-19, 76-77.  Plaintiff filed grievances against Defendant Allan, which Plaintiff claims caused Defendant Allan to tamper with his legal mail.  Defendant

Allan's tampering led to Plaintiff not being able to answer the motion to dismiss in this case. Id.

In the 10th Cause of Action, Plaintiff filed a grievance against Defendant Allan for harassment and retaliation for what Plaintiff claims were malicious and excessive cell frisks. Compl. ¶ 49.  It appeared to Plaintiff that someone entered his cage and "just scattered his paper work and property around to create a mess" in retaliation for filing grievances. Id.

The 20th Cause of Action is both a retaliation claim and conditions of confinement claim. Compl. ¶ 124.  Plaintiff broke his cell door, so five days later Defendant Allan, along with Defendant Menard, put him in #13 cage  [described in paragraph 70 as not being swept or mopped and having loose and broken screws in the light fixture]  which was unsanitary in retaliation for "making his cell gate malfunction."  Id.


### 3. Menard

The 1st Cause of Action in which Plaintiff describes how Defendant Menard threatened him has been dismissed. Compl. ¶ 9.

The 20th Cause of Action is both a retaliation claim and conditions of confinement claim. Compl. ¶ 124.  Plaintiff broke his cell door, so five days later Defendant Menard, along with Defendant Allan, put him in #13 cage (as described above and in paragraph 70) which was unsanitary in retaliation for "making his cell gate malfunction."  Id.

### 4. Boudrieau & Martin

In the 8th Cause of Action, Plaintiff claims both defendants confiscated the medically approved insoles for Plaintiff's medical boots by falsely making the metal detection device beep over his boots.  Compl. ¶¶ 38,40.  Plaintiff claims this was done to harass and retaliate against Plaintiff for a sarcastic comment he made to Defendant Martin.  Id. ¶¶ 40, 42.  Without the insoles in his boots, Plaintiff got blisters and had "significant pain" in his heels and arches because his boots, no longer fit properly.  Id. ¶ 42.

### 5. Delutis

In the 19th Cause of Action, Plaintiff claims that Defendant Delutis should have given direction to someone to clean the cells since they are "not being adequately cleaned" and he is the SHU supervisor.  Compl. ¶ 70.

In the 22nd Cause of Action, Plaintiff claims his Eighth Amendment rights were violated when Delutis fabricated a scenario to harm plaintiff by placing him in an unsanitary cell while overseeing a cell frisk.  Compl. ¶ 126.  Plaintiff describes the cell as "smelling like a zoo" and "generally filthy," with the sink appearing to "not have been cleaned in months." Id. ¶ 82.  Plaintiff states that "approximately an hour elapsed" between when he was taken out of this cell, placed in the unsanitary cell and ultimately brought to another cell.  Compl. ¶ 83.  Phillips contends that within the new cell the "pillow and mattress were both fouled" and it "smelled bad."  Id. ¶ 84.  Plaintiff tore the pillow and blanket to pieces and advised the facility Captain[1] of his mattress conditions.  Id. ¶¶ 84-85.  The Captain, once made aware of

---

[1] Captain Lacy is named in the description of events, however he is not a named party to this action.

the cell conditions, provided Plaintiff with a new mattress.  Id. ¶ 45.  Defendant Delutis, the area supervisor of The Special Housing Unit ("SHU")[2] was asked by Plaintiff to inspect Defendant Delisle while he conducted the cell frisk.  Plaintiff heard both Defendants "whispering in his cage and then brief laughter."  Id. ¶ 79.  Defendant Delutis told Plaintiff the frisk was going according to rules and regulations and that he "will not tell staff how to conduct a cell frisk, they do as they want, you don't like it, you know what you gotta do."  Id. ¶ 79.

### 6. Delisle[3]

In the 22nd Cause of Action, as described in the paragraph above, Defendant Delisle is accused of fabricating a scenario to harm Plaintiff with Defendant Delutis by placing him in an unsanitary cell during the cell search.  Compl. ¶¶ 78, 81-82,84.

### 7. Tucker[4]

In the 11th Cause of Action, Plaintiff claims Defendant Tucker retaliated against him for a previous comment Plaintiff made the night before, which spurred a retaliatory cell frisk. Compl. ¶ 51.  Plaintiff claims his property was strewn about and someone spit tobacco juice

---

[2] SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2007).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

[3] Defendant Delisle is also accused of stealing all of Plaintiff's property (Compl. ¶¶ 78), however that claim has been dismissed.

[4] Defendant Tucker is also accused of destruction of Plaintiff's legal documents, stealing property, and an illegal cell frisk (Compl. ¶¶ 51), however these claims have been dismissed.

into Plaintiff's bread.  Plaintiff also claims this was cruel and unusual punishment.  Id. ¶¶ 52-53.

In the 12th Cause of Action, Plaintiff filed a grievance against Tucker for stealing his pillow and not receiving a replacement for multiple weeks.  Compl. ¶ 55.

### 8. James

In the 2nd Cause of Action, Plaintiff claims his Eighth Amendment rights were violated when Defendant James yanked the chain holding Plaintiff's handcuffs which caused "blistering fire" in his wrists and his hands "felt numb and fuzzy."  Compl. ¶ 12.  Plaintiff contends James "appeared to be really attempting to snap plaintiff's wrists" by putting all of his weight onto the chain.  Id. ¶ 12.  James later roughly shoved Plaintiff into the wall "in an attempt to ram his face into the wall."  Id. ¶ 13.  James then put Plaintiff back in his cell, removed the cuffs, and slapped Plaintiff's hands "hard."  Id. ¶ 14.

### 9. Bouissey[5]

The 5th Cause of Action claims Defendant Bouissey violated Plaintiff's Eighth Amendment rights by denying him use of the restroom.  Compl. ¶ 23.  Plaintiff says he was deliberately ignored when he requested use of the bathroom on the monitoring camera while out in the exercise yard and therefore relieved himself in a drain ditch, which caused him to receive a "false" behavior report[6].  Id. ¶ 22.

---

[5] In the 15th Cause of Action, Defendant Bousissey is accused of threating Plaintiff, however that claim has been dismissed.
[6] Claims of false misbehavior reports have also been dismissed.

### 10.  Lee[7]

In the 13th Cause of Action, Plaintiff claims Defendant Lee gave him his kosher meal with dirty gloves and when Plaintiff objected to it, Lee slammed the hatch down on Plaintiff's hand, "applying his weight down in an effort to harm plaintiff and keep him pinned."   Compl. ¶¶ 57-58.  After this exchange, Lee did not give Plaintiff the rest of his meal.  Id. ¶ 58.

The 16th Cause of Action alleges an Eighth Amendment violation when Lee denied Plaintiff outside exercise on one occasion.  Compl. ¶ 64.

### 11. Bezio[8]

In the 17th Cause of Action, Defendant Bezio denied Plaintiff his outside recreation time for "running his mouth."  Compl. ¶ 66.

### 12. Amo & Rocque

In the 14th Cause of Action, Plaintiff contends his Eighth Amendment rights were violated when the Defendants (the Food Service Administrator and Head Cook)  gave Plaintiff a contaminated kosher tray that had a cockroach on it and was missing 2 jellies. Compl. ¶ 60.  Plaintiff was denied another tray. Id.

---

[7] Defendant Lee was also accused of harassment, however that claim has been dismissed.

[8] Defendant Bezio was also accused of harassment, however that claim has been dismissed.

### 13. Trudeau

In the 25th Cause of Action, Plaintiff contends Defendant Trudeau delivered a regular meal to Plaintiff instead of a kosher meal while Plaintiff was housed in OBS. Compl. ¶ 99. Plaintiff claims it was "obvious he was being denied his meal purposely since all concerned were aware he was in OBS." Id. Plaintiff asked Trudeau to get his kosher breakfast and was denied his meal. Id.

### 14. Hutti[9]

In the 24th Cause of Action, Defendant Hutti allegedly placed Plaintiff in a secure area (2-company shower) and kept him there for two hours while Hutti and plumbers were in Plaintiff's cell due to flooding from "action by Defendant and/or civilian plumbers which caused the flooding." Compl. ¶ 93. After being taken from the shower, Plaintiff was taken to a new cell and noticed "there was no mat nor pillow [and] the cage was disgusting." Id. ¶ 94. Plaintiff also notes the sink and toilet had not been cleaned for some time and the sink gave off a strong smell "like sewage." Id. Hutti brought Plaintiff his kosher meal in that cage and Plaintiff told Hutti to put the kosher meal in his usual cell because "he had no intentions of attempting to consume food in such an obviously foul cage." Id. ¶ 95. Plaintiff then "heard his tray being tossed in the trash can." Id. Plaintiff claims he was in this cell for one hour before being returned to his regular cell. Id. ¶ 96.

---

[9] Defendant Hutti is accused of violating Plaintiff's Fourth and Fourteenth Amendment rights, however those claims have been dismissed and only the remaining Eighth Amendment claims will be analyzed.

### 15. Waldron & Berggren

In the 6th Cause of Action, Plaintiff stopped Defendant Waldron during her weekly round to tell her that he needed to privately speak with her about his mental health because he was experiencing "severe mental and emotional issues for which he had not previously been subjected to."[10]  Compl. ¶ 24.  Defendant Waldron replied there was nothing she could do for Plaintiff because he was in administrative segregation status and she could not help him.  Id. ¶ 25.  Plaintiff filed requests with Defendants Waldron and Berggren to receive mental health services and was ignored.  Id. ¶ 26.  Plaintiff also sent identical mental health requests to outside agencies and his requests were met with negative responses.  Id. ¶ 27. According to Plaintiff, "many responses were evidently constructed in a fashion as to 'cover' themselves as well as the facility at Clinton."  Id.

### 16. Savage

The 7th Cause of Action claims that Defendant Savage was walking around and Plaintiff stopped him to ask some questions about his mental health file.  Compl. ¶ 31.  Plaintiff claims he talked with Savage who told him, "you know how things 'work' when it concerns you."  Id.  Plaintiff claims Savage approached him a few months later and asked him if he wanted to come out of his cell to "talk."  Id. ¶ 33.  Plaintiff claims this was the last time he had a "bonafide interview" regarding his mental health and during this time.  Plaintiff explained all of the symptoms he was experiencing.  Id.  Savage told Plaintiff he may have

---

[10] Plaintiff notes in Complaint ¶¶ 30 that he has been required to "self-diagnose" his mental issues, and has diagnosed himself as having severe anxiety, blackouts, chronic fatigue and nervousness.

a "legitimate anxiety issue" and said he would get Plaintiff an opportunity to speak to Dr. Berggren personally.  Id.  Such opportunity never occurred.  Id. ¶ 34.

This action followed.

## II. Discussion

### A. Legal Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure calls upon a court to gauge the facial sufficiency of that pleading using a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Iqbal, 556 U.S. 677–78 (quoting Fed.R.Civ.P. 8(a)(2)).  While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions.  See id. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citing Twombly, 550 U.S. at 555–56); see also Cooper v. Pate, 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d

10

Cir.2003); <u>Burke v. Gregory</u>, 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. <u>Iqbal</u>, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570); <u>see</u> <u>also</u> <u>Ruotolo v. City of New York</u>, 514 F.3d 184, 188 (2d Cir.2008). As the Second Circuit has observed, "[w]hile <u>Twombly</u> does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" <u>In re Elevator Antitrust Litig.</u>, 502 F.3d 47, 50 (2d Cir.2007) (quoting <u>Twombly</u>, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a <u>pro</u> <u>se</u> litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. <u>Erickson</u>, 551 U.S. at 94 (" '[A] <u>pro</u> <u>se</u> complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)) (internal citation omitted)); <u>Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d 185, 191 (2d Cir.2008) ("[W]hen a plaintiff proceeds <u>pro</u> <u>se</u>, a court is obliged to construe his pleadings liberally." (internal quotation marks and alterations omitted)); <u>Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.</u>, 804 F.Supp.2d 100, 104 (N.D.N.Y.2011) (Hurd, J.) ("A <u>pro</u> <u>se</u> complaint must be read liberally.").

## B. First Amendment

Phillips alleges that his First Amendment rights were violated when he was denied kosher meals intermittently while incarcerated at Clinton Correctional Facility.

The First Amendment protects the right to free exercise of religion.  See generally Cutter v. Wilkinson, 544 U.S. 709, 719, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).  "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause."  Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir.2003) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)).  This right is not absolute and can be limited due to the inmate's "incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citations omitted); see also Benjamin v. Coughlin, 905 F.2d 571, 574 (2d Cir.1990) ("The governing standard is one of reasonableness, taking into account whether the particular regulation ... is reasonably related to legitimate penological interests.") (citations omitted).

The Turner Court determined that the four factors to be considered are: 1) whether there is a rational relationship between the regulation and the legitimate government interests asserted; 2) whether the inmates have alternative means to exercise the right; 3) the impact that accommodation of the right will have on the prison system; and 4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest. Benjamin, 905 F.2d at 574 (citing Turner v. Safely, 483 U.S. 78, 89–91 (1987).

12

## 1. Failure to Provide Kosher Meals

The Second Circuit has held "that prison authorities must accommodate the right of prisoners to receive diets consistent with their religious scruples." Kahane v. Carlson, 527 F.2d 492, 495 (2d Cir.1975). This includes providing kosher food to those of the Jewish faith. Bass v. Coughlin, 800 F.Supp. 1066, 1071 (N.D.N.Y.1991) (citing Kahane, 527 F.2d 492). Therefore, to "deny prison inmates the provision of food that satisfies the dictates of their faith. . . unconstitutionally burden[s] their free exercise rights." McEachin v. McGuinnis, 357 F.3d 197, 203 (2d Cir.2004). "Courts, however, are reluctant to grant dietary requests where the cost is prohibitive, or the accommodation is administratively unfeasible." Benjamin, 905 F.2d at 579.

The denial of three kosher meals, on three separate occasions, did not constitute more than a de minimus burden. See McEachin, 357 F.3d at 203 n. 6 (holding that, "[t]here may be inconveniences so trivial that they are most properly ignored . . . [thus] the time-honored maxim 'de minimis non curat lex[11] applies."); see also Rapier v. Harris, 172 F.3d 999, 1006 n. 4 (7th Cir.1999)("De minimis burdens on the free exercise of religion are not of constitutional dimension.") (citations omitted); Thomas v. Picio, No. 04–CV–3174, 2008 WL 820740, at *6 n. 8 (S.D.N.Y. Mar. 26, 2008) (finding that the denial of all kosher meals for one or two days was "not a substantial burden" which was actionable) (Ex. A).[12] Similar to the plaintiff in Thomas, Philips was denied three individual meals on three separate days, with no other complaints of meal problems thereafter. Such denials resulted in a de minimis burden on Philips' religious practice.

---

[11] This phrase translates as "the law does not concern itself with trifles." Gottlieb Dev. LLC v. Paramount Pictures Corp., 590 F.Supp.2d 625, 632 (S.D.N.Y.2008).

[12] All unpublished decisions are attached to this Report and Recommendation.

13

Furthermore, the cessation of the diet was based mostly upon a miscommunication between defendants and Philips, or by Philips denying his meal.  This behavior was, at worst, negligence on behalf of the staff which is insufficient to establish liability under § 1983.  Davidson v. Cannon, 474 U.S. 344, 347, (1986) (holding "that § 1983 provides no remedy for the . . . negligence found in this case ") (internal quotation marks and citations omitted); Poe v. Leonard, 282 F.3d 123, 145 (2d Cir.2002) ("[M]ere negligence is insufficient as a matter of law to state a claim under section 1983.") (citations omitted).  As such, he has failed to state a First Amendment claim.

Accordingly, defendants' motion as to Defendant's Lee, Trudeau and Hutti under this claim should be granted.

### 2. Access to Courts and Legal Mail

"Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution."  Davis v. Goord, 320 F.3d 346, 351 (2d Cir.2003).  In order"[to state a claim for denial of access to the courts, including those premised on] interference with legal mail . . . a plaintiff must allege [that a defendant caused 'actual injury,' i.e.] took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim."  Id. (citations and internal quotation marks omitted).  Such injury must affect "a non-frivolous legal claim [which] had been frustrated or was being impeded due to the actions of prison officials."  Warburton v. Underwood, 2 F.Supp.2d 306, 312 (W.D.N.Y.1998) (citations and internal quotation marks omitted); Shine v. Hofman, 548 F.Supp.2d 112, 117–18 (D.Vt.2008) (explaining that actual injury "is not satisfied by just any type of frustrated legal

claim because the Constitution guarantees only the tools that inmates need in order to attack their sentences ... and ... challenge the conditions of their confinement.") (internal quotation marks and citations omitted). Accordingly, without identification of the underlying action which was prejudiced, actual injury, and by extension a First Amendment violation, cannot be established. See Christopher v. Harbury, 536 U.S. 403, 415 (2002) ("[T]he underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation.").

Phillips alleges in his first claim that defendant Allan began impeding his access to the courts in 2006 when Allan took over mail watch duties. However, Phillips has failed to plead with any specificity what the underlying action was that had supposedly been prejudiced or what hindrance resulted to Phillips' underlying legal claim. Accordingly, defendant's motion as to this claim should be granted.

In Phillips second claim, he alleges that in 2011 an Article 78 claim was not received by the courts until approximately one month after it was sent. Phillips broadly contends that "there was no reason why plaintiff's document should have been delayed." In the same claim, plaintiff states he believes Allan also prevented the filing of his "motion in opposition" to defendant's motion to dismiss which resulted in the Article 78 being dismissed for failure to reply. However, Phillips has failed to identify with any sort of specificity the underlying legal claim or demonstrate that it was meritorious. Therefore, because conclusory assertions are insufficient to state a claim under 42 U.S.C. §1983, defendants' motion as to this claim should be granted.

### 3. Retaliation

Courts have been cautioned to approach First Amendment retaliation claims by prisoners with skepticism and particular care. See e.g., Davis v. Goord, 320 F.3d 346, 352 (2d Cir.2003) (citing Dawes v. Walker, 239 F.3d 489, 491 (2d Cir.2001), overruled on other grounds by Swierkiewicz v. Sorema, NA, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). However, that does not mean that such claims are automatically to be dismissed. Such a claim can survive a defendant's motion to dismiss, but only if plaintiff alleges facts tending to establish that (1) the speech or conduct that led to the allegedly retaliatory conduct is the sort of speech or conduct that is protected by the Constitution; (2) defendant(s) took adverse action against the plaintiff; and (3) there is a causal connection between the protected speech or activity and the adverse action. See Jones v. Harris, 665 F. Supp. 2d 384, 398 (S.D.N.Y. 2009). These allegations may not be conclusory; they must have some basis in specific facts that are not inherently implausible on their face. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); South Cherry Street LLC v. Hennessee Group LLC, 573 F.3d 98, 110 (2d Cir.2009).

Furthermore, '[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his . . . constitutional rights constitutes an adverse action[;] . . . [if a] retaliatory act is . . . de minimis, . . . [it falls] outside the ambit of constitutional protection." Davis, 320 F.3d at 353 (citing Dawes, 239 F.3d 489). In this regard, prisoners may be required to tolerate more than public employees or average citizens before a purportedly retaliatory action taken against them is considered adverse, Thaddeus–X v. Blatter, 175 F.3d 378, 392–93 (6th Cir., 1999).

**a. LaValley**

Phillip's alleges that defendant LaValley retaliated against him after Phillip's filed a grievance regarding a prior incident with LaValley.  Defendant LaValley supposedly forced Plaintiff to remove photos off of his cell wall that he was previously allowed to have.  While filing of grievances is protected conduct, the adverse action of removing photos off of a cell wall is so de minimis, that it "falls outside the ambit of constitutional protection."  Davis, 320 F.3d at 353 (citing Dawes, 239 F.3d 489).  Therefore, defendants' motion as to this claim should be granted.

**b. Allan**

The facts as to the alleged retaliation by defendant Allan are somewhat unclear, however it appears that after Plaintiff filed a grievance against Allan and then Plaintiff returned to his cell and found his paperwork and property scattered around "to create a mess."  It appears that Plaintiff is alleging defendant Allan is responsible for the state of his cell.

Plaintiff alleges that Allan's retaliatory searches[13] resulted in the seizure of some of his property and the "trashing" of his cell.  While the filing of grievances is protected conduct, the cell search does not appear to establish adverse action.  Plaintiff may be

> suggesting that these searches were unusually punitive and so were out of the
> ordinary[. However,] plaintiff alleges no facts tending to show that, in an
> ordinary random cell search, property is not seized and cells are not turned

---

[13] In Plaintiff's complaint, he uses the wording "cell frisks" implying more than one, however the complaint only addresses and describes one instance. While Plaintiff filed a grievance against Defendant Allan for this cell search, Plaintiff's complaint does not specify who searched his cell, only that "someone entered his cage" while he was gone. Compl. ¶¶ 49.

> upside down and inside out.  It is to be expected that cell searches will disrupt, not only the prisoner's life, but also the living conditions inside the cell; and since one purpose of a cell search is to locate and recover contraband, the court cannot turn a blind eye to the fact that prisoner property is sometimes seized when cells are searched."

Jones v. Harris, 665 F. Supp. 2d 384, 398 (S.D.N.Y. 2009).  Phillips has failed to allege any

facts demonstrating that the searches (regardless of who conducted or ordered them or

how disruptive they were) were so much a departure from the norm as to be greater than a

de minimis disruption, or to qualify as conduct that would deter an individual of ordinary

firmness from exercising his constitutional rights.  Id.  Accordingly, defendants' motion as to

this claim should be granted.


### c. Menard

Defendant Menard is accused of putting Plaintiff in an "unsanitary cell" in retaliation for

Phillip's making his cell gate malfunction five days prior.  Plaintiff fails to meet his burden of

demonstrating the first prong of a plausible claim, because destruction of prison property is

not a constitutionally protected action.[14]  Accordingly, defendants' motion as to this claim

should be granted.


### d. Boudrieau & Martin

Defendants Boudrieau and Martin are jointly accused of removing Plaintiff's medically

approved insoles from his boots, which caused him blistering and "significant pain" in

retaliation for a sarcastic comment made by Plaintiff to defendant Martin.  However, making

---

[14] While the court could not find this enumerated in any cases, it is apparent to the court that destruction of property is not conduct protected by the Constitution.

18

sarcastic comments to Correctional Officers is not conduct protected by the Constitution[15], therefore defendants' motion as to this claim should be granted.

### e. Tucker

Plaintiff claims that he made a comment to defendant Tucker which caused him to retaliate against Plaintiff by doing a cell frisk the following evening which caused Plaintiff's property to become "strewn about," and "someone" supposedly spit tobacco juice into his bread.  Plaintiff does not meet the burden of proof here because he has not established an engagement in protected conduct.  "Inmates have no reasonable expectation of privacy in their prison cells[; therefore Phillips] ha[s] no constitutional right to be free from cell searches of any kind, including retaliatory cell searches."  See Rodriguez v. McClenning, 399 F.Supp.2d 228 at 239 (2005).  Accordingly, defendants' motion as to this claim should be granted.

### C. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  Eighth Amendment obligations include the duty to protect prisoners from other known harms.  Farmer v. Brennan, 511 U.S. 825, 829 (1970); Matthews v. Armitage, 36 F.Supp.2d 121, 124 (N.D.N.Y.1999) (citations omitted).  It also includes the provision of medical care.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994).

---

[15] While the court could not find this enumerated in any cases, it is apparent to the court that sarcastic comments to Corrections Officers is not conduct protected by the Constitution.

The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. <u>Farmer</u>, 511 U.S. at 834. Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. <u>Id.</u> "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." <u>Id.</u> at 844.

### 1. Conditions of Confinement

"The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." <u>Farmer</u>, 511 U.S. at 832. This includes the right to "receive adequate food, clothing, shelter, and medical care . . . ." <u>Id.</u> (citations omitted). As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test." <u>Jolly v. Coughlin</u>, 76 F.3d 468, 480 (2d Cir.1996) (citations omitted). Thus, "a prisoner may prevail only where he proves both an objective element—that the prison officials' transgression was sufficiently serious—and a subjective element—that the officials acted, or omitted to act, with a sufficiently culpable state of mind . . . ." <u>Phelps v. Kapnolas</u>, 308 F.3d 180, 185 (2d Cir.2002) (internal quotation marks and citations omitted).

> The objective prong can be satisfied by conditions of confinement . . . [which] in combination [constitute an Eighth Amendment violation] when each would not do so alone ... [such as] when the conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such

as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.

Davidson v. Murray, 371 F.Supp.2d 361, 370 (W.D.N.Y.2005) (citations omitted).

However, "[n]othing so amorphous as overall conditions can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." Id. (citing Wilson v. Seiter, 501 U.S. 294, 304–05 (1991)). The subjective prong requires "a prison official [to] have a sufficiently culpable state of mind . . ., of deliberate indifference to inmate health or safety." Farmer, 511 U.S. at 834 (citations omitted).

### a. Allan and Menard

Defendant's Allan and Menard are accused of placing Plaintiff in an unsanitary cell in retaliation for breaking his cell door. However, the allegations do not supply any more detail explaining what made the cell unsanitary, let alone a substantial risk of serious harm. See Hamilton v. Fischer, No. 10-CV-1066 (MAD/RFT), 2012 WL 987374, at *8 (N.D.N.Y. Feb. 29, 2012) ("allegations of unsanitary conditions that are general in nature and do not specify any particularized facts regarding the level of hygiene do not state a claim upon which relief can be granted.") (internal quotation marks and citations omitted) (Ex. B). Additionally, no facts were alleged that suggest either Defendant Allan or Menard acted with deliberate indifference to Phillips' safety.

Accordingly, defendants' motion as to this claim should be granted.

### b. Delutis and Delisle

Defendant's Delutis and Delisle are accused of placing Plaintiff in an unsanitary cell

which Plaintiff describes as "smelling like a zoo" and "generally filthy," with the sink appearing to "not have been cleaned in months." Plaintiff states that "approximately an hour elapsed" when he was taken out of this cell and brought to another cell. Phillips contends that in the new cell he was brought to the "pillow and mattress were both fouled" and it "smelled bad." Plaintiff tore the pillow and blanket to pieces and advised the facility Captain of his mattress conditions. The Captain, once made aware of these conditions, provided Plaintiff with a new mattress.

In this case, Plaintiff was held in these conditions for approximately one hour. "The Eighth Amendment is generally not violated . . . where unsanitary conditions are temporary." Ortiz v. Department of Correction of the City of New York, No. 08-CV-2195 (RJS)(HBP), 2011 WL 2638137, at *7 (S.D.N.Y. Arp. 29, 2011) (Ex. C) (quoting Kee v. Hasty, No. 01-CV- 2123 (KMW)(DF), 2004 WL 807071 at *26 n.24 (S.D.N.Y. Apr. 14, 2004) (Freeman, M.J.) (Report and Recommendation) (Ex. D)), see also McNatt v. Unit Manager Parker, No. 99-CV- 1397 (AHN), 2000 WL 307000 at *4 (D. Conn. 2000) (Ex. E); Whitnack v. Douglas County, 16 F.3d 954, 955-58 (8th Cir. 1994) (reversing jury verdict for plaintiff and finding no violation based on 24 hour exposure to vomit in sink, dried feces on toilet seat and dried urine puddles on floor before cleaning supplies were made available); Prellwitz v. Anderson, No. 07-CV-2120 (PAM/JSM), 2007 WL 2033804 at *2-*3 (D. Minn. July 12, 2007) (granting motion to dismiss under 28 U.S.C. § 1915A(b) where waste water on cell floor lasted only three hours and odor of inoperable toilet lasted six hours) (Ex. F); Odom v. Keane, No. 95-CV-9941 (SS), 1997 WL 576088 at *5 (S.D.N.Y. Sept. 17, 1997) [19]  (Sotomayor, D.J.) (condition where toilet failed to flush between 9 p.m. and 7 a.m. for several months "does not amount to cruel and unusual punishment") (Ex. G); Evans v.

Fogg, 466 F. Supp. 949, 950 (S.D.N.Y. 1979) (Lasker, D.J.) ("To be kept in a refuse-strewn cell for 24 hours and in a flooded cell (a condition resulting from [plaintiff's] own acts) for two days is a rough experience, but, since neither condition persisted for more than a limited period of time, it cannot be said that the condition amounted to cruel and unusual punishment.")). Thus, even crediting Plaintiff's allegations as true, because he only spent an hour in that cell has failed to satisfied the objective prong of the analysis.

Additionally, a plaintiff cannot succeed on an Eighth Amendment claim where there is no genuine issue of fact that defendants were deliberately indifferent. See Ortiz 2011 WL 2638137, at *8. In this case, Plaintiff was provided with a new mattress when he informed staff about his need for a new one. This behavior does not indicate deliberate indifference to Phillips' condition and therefore based on the above, defendants' motion as to this claim should be granted.


### c. Amo & Roque

Defendants Amo and Roque are accused of providing Plaintiff with a "contaminated" Kosher tray that was missing two jellies but included a cockroach. Plaintiff then claims that he requested and was denied receiving a different tray. Plaintiff has failed to allege any harm or deprivation of a singular human need. According, these allegations are insufficiently serious to sustain an Eighth Amendment conditions of confinement claim. See Govan v. Campbell, 289 F.Supp.2d 289, 296–97 (N.D.N.Y.2003) (allegations that shower stalls had rust bubbles, birds were permitted to fly within the cells, and that the prison had "cockroach problems" were insufficient to state an Eighth Amendment claim, especially since plaintiff failed to identify how he was harmed by such conditions). Defendants' motion

23

as to this claim should be granted.

### d. Hutti[16]

Defendant Hutti is accused of moving Plaintiff to a secure area after he allegedly flooded the company.  Plaintiff was taken to this location for two hours and claims the area he was being held in began to flood due to actions by "defendant and/or civilian plumbers."  Plaintiff was taken from this location and moved to #7 cage where he noticed "there was no mat or pillows" and "the cage was disgusting."  Plaintiff also states that the sink and toilet "had not been cleaned in some time" and dirty water in the sink gave off "a strong stench not unlike sewage."  Other descriptions of the cell include it being "generally filthy" and Plaintiff did not believe the floor had been swept in weeks because there were "dust bunnies."

Conditions that create "temporary inconveniences and discomforts" or that make "confinement in such quarters unpleasant" are insufficient to state an Eighth Amendment claim.  Adams v. Pate, 445 F.2d 105, 108-09 (7th Cir.1971).  In Adams, the court of appeals did not find a constitutional violation when an inmate alleged that his cell was filthy and stunk, the water faucet from which he drank was only inches above the toilet, and the ventilation was inadequate.  Id.  The Adams holding, while only persuasive, is still instructive to this case given the factual similarities such that in both cases the inmates alleged having "filthy" cells among other issues.  The Adams court did not find those conditions to be adverse enough as to rise to the level of an Eighth Amendment violation, despite them being arguably more unpleasant than the circumstances as described here.

---

[16] Fourth and Fourteenth amendment claims against Defendant Hutti have previously been dismissed and only the Eighth amendment claim will be addressed in this report.

For this reason, defendants' motion as to this claim should be granted.

## 2. Denial of a Basic Human Need

Defendants LaValley, Tucker and Bouissey are accused of denying Plaintiff of what he claims are "basic human needs" under the Eighth Amendment. In three separate and unrelated instances, Phillips alleges he was denied (1) ear plugs by defendant LaValley; (2) a pillow by defendant Tucker; and (3) use of the restroom while in the exercise yard by defendant Bouissey.

However, even assuming the truth of these factual allegations, they are the type of de minimis deprivations that fail to state a constitutional claim. Phelan v. Zenzen, No. 10-CV-6704 CJS, 2012 WL 5420423, at *5 (W.D.N.Y. Nov. 6, 2012) (stating that the denial of a pillow for several nights did not violate Eighth Amendment) (Ex. H); see also, Gillard v. Rovelli, No. 09–CV–0431 (TJM/DEP), 2010 WL 5149277 at *5 (N.D.N.Y. Aug.30, 2010) (collecting cases concerning razors) (Ex. I); Williams v. DeTella, No. 95-CV-6498, 1997 WL 603884 at *2 (N.D.Ill. Sep.23, 1997) ("Clothing is one of the necessities of civilized life . . . and while prisoners are not entitled to a daily change of clothes, at some point the denial of clean clothes could be a deprivation of constitutional magnitude. . .The same goes for bedding . . . although the court emphasizes that the limit is set by decency and hygiene, not comfort. Pillows need not be provided.") (Ex. J) (citations omitted); Loadholt v. Lape, No. 09–CV–0658 (LEK/RFT), 2011 WL 1135934 at *4 (N.D.N.Y. Mar.3, 2011) ("[C]ourts in this Circuit have found the deprivations of better pain medicine, a cane, a mattress, a pillow, or better shoes, as the Plaintiff has alleged, do not meet, neither singularly nor collectively, the objective standard under the Eighth Amendment.") (Ex. K); Smith v. Arnold, No. CV

07–1353–PHX–DGC (MEA), 2008 WL 5331754 at *4 (D.Ariz. Dec.22, 2008) ("[A] restriction on possessing a television, a radio/cassette player, headphones, a fan, an electric shaver, and tapes does not rise to the level of a significant and atypical hardship that creates a liberty interest.") (Ex. L).

As to the denial of Plaintiff's use of the bathroom, "case law has established that temporary denial of a bathroom does not establish the existence of an objective injury for purposes of an Eighth Amendment claim." Jones v. Marshall, No. 08-CV-0562, 2010 WL 234990, at *3 (S.D.N.Y. Jan. 19, 2010) (Ex. M); see also Whitted v. Lazerson, No. 96-CV-2746(AGS), 1998 WL 259929, at *1-2 (S.D.N.Y. May 21, 1998) (no objective injury where plaintiff had to wait ninety minutes to use the bathroom, during which time he "was forced to hold his bowel movement at painful levels, and at times partially urinated and defecated in his clothing") (Ex. N); Odom v. Keane, No. 95-CV- 9941(SS), 1997 WL 576088, at *5 (S.D.N.Y. Sept. 15, 1997) (no objective injury where plaintiff's toilet did not function for a ten-hour period between 9 p.m. and 7 a.m.) (Ex. G); Rogers v. Laird, No. 07-CV-668 (LEK/RFT), 2008 WL 619167, at *3 (N.D.N.Y. Feb. 8, 2008) ("The temporary deprivation of restroom privileges for a three hour period does not constitute an extreme deprivation of life's necessities.") (citation omitted) (Ex. O); Bourdon v. Roney, No. 99-CV-0769 (LEK)(GLS), 2003 WL 21058177, at *10-11 (N.D.N.Y. Mar. 6, 2003) (three hour deprivation of bathroom privileges did not constitute Eighth Amendment violation) (Ex. P). Consistent with this case law, Plaintiff's temporary deprivation of access to bathroom facilities while he was outside during recreation are similarly insufficient to establish a constitutional violation. Defendants' motion as to these claims should be granted for failure to state a claim.

### 3. Denial of Outdoor Recreation

Defendants Lee and Bezio are each accused of denying Plaintiff outdoor recreation time on two separate and unrelated occasions. As previously stated by the Western District, "[a]lthough the Second Circuit has approved one hour of outdoor recreation per day, it has not held that to be the constitutional minimum". Phelan, No. 10-CV-6704 CJS, 2012 WL 5420423, at *5 (W.D.N.Y. Nov. 6, 2012) (citations and quotations omitted) (Ex. H). Instead, deprivations of exercise for relatively brief periods of time are usually upheld. Ford v. Phillips, No. 05-CV-6646 (NRB), 2007 WL 946703, at *9 (S.D.N.Y. Mar. 28, 2007) (finding that, "as a matter of law, minor and temporary deprivations of property, showers and recreation . . . " in no way involved the severity of treatment which must be shown to make out a case of cruel and unusual punishment.") (citations omitted) (Ex. Q); see, e.g., Branham v. Meachum, 77 F.3d 626, 630–31 (2d Cir.1996) (finding that keeping inmate on lockdown and "full restraint" status without outdoor exercise for a period of approximately twenty-two days was insufficient to satisfy the subjective prong and therefore does not violate the Eighth Amendment); Houston v. Goord, No. 03–CV–1412 (GTS/DEP), 2009 WL 890658, at *15 (N.D.N.Y. Mar.31, 2009) (declaring Eighth Amendment claim without merit because denial of opportunity to exercise outdoors for less than two weeks was de minimis) (Ex. R); Dumpson v. Goord, No. 00–CV–6039–CJS, 2011 WL 4345760 at *9 (W.D.N.Y. Sep.15, 2011) (citing cases) (Ex. S). Here, Phillips does not allege that he was deprived of all exercise. Instead, Plaintiff alleges that on only two separate occasions was he deprived of exercise in the prison yard. Such allegations fail to state an Eighth Amendment claim, and defendants' motion as to these claims should be granted.

**4. Excessive Force**

Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983.  Hudson v. McMillian, 503 U.S. 1, 9–10 (1992).  The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain."  Gregg v. Georgia, 428 U.S. 153, 173 (1976); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir.2000).  To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements.  Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir.1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection."  Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262.  However, "the malicious use of force to cause harm constitute[s][an] Eighth Amendment violation per se" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  Hudson, 503 U.S. at 9–10 (citations omitted).  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'"  Sims, 230 F.3d at 22 (quotation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness."  Sims, 230 at 21 (citation omitted).  The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Id. (quoting

28

<u>Hudson</u>, 503 U.S. at 7).  In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response."  <u>Scott v. Coughlin</u>, 344 F.3d 282, 291 (2d Cir.2003) (internal quotation marks and citations omitted).

### a. James

Phillips alleges that Defendant James yanked the chain holding Plaintiff's handcuffs and according to Plaintiff "he appeared to be really attempting to snap Plaintiff's wrists."  Phillips also asserts that James later roughly shoved him into the wall in what Phillips believed was "an attempt to ram his face into the wall."  After this incident James supposedly placed Plaintiff back in his cell, removed his handcuffs and "slapped his hands hard."

As the complaint is read in a light most favorable to the Plaintiff, this conduct while potentially not objectively serious, seems to have been done solely to cause harm.  Thus, pursuant to <u>Blyden</u>, such a malicious use of force, intended solely cause harm, is sufficient to establish a plausible Eighth Amendment violation.  Therefore defendants' motion as to this claims should be denied.

### b. Lee

Plaintiff claims that Defendant Lee gave him his Kosher meal with dirty gloves, which

Plaintiff objected to, causing Lee to slam the hatch down on Plaintiff's hand, "applying his weight down in an effort to harm Plaintiff and keep him pinned."

In this situation also, the complaint is being read in a way most favorable to the Plaintiff and since this conduct does not appear to be in a good-faith effort to maintain or restore discipline but instead to solely cause harm, it is sufficient to establish a plausible Eighth Amendment violation. Accordingly, Defendants' motion as to this claims should be denied.

### 5. Meals

The Eighth Amendment "require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it." Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir.1983). "While no court has held that denial of food is a per se violation of a prisoner's Eighth Amendment rights, under certain circumstances a substantial deprivation. . . may well be recognized as being of constitutional dimension." Id. (citations omitted). However, the deprivation must be sufficient to create a serious danger to the health of the inmate. See, e.g., Beckford v. Portuondo, 151 F. Supp. 2d 204, 213 (N.D.N.Y.2001) (finding deprivation of two of three meals per day for eight days created an issue of material fact sufficient for Eighth Amendment claim to survive summary judgment); Moss v. Ward, 450 F. Supp. 591, 596–597 (W.D.N.Y.1978) (finding denial of food for four consecutive days and reduced food for three days thereafter sufficient to violate prisoner's Eighth Amendment rights).

As addressed earlier, Phillips claims defendant's Lee, Trudeau, and Hutti caused him to miss three meals on separate and unrelated occasions. The scope of the deprivation of

food required to constitute cruel and unusual punishment is significantly greater than the deprivation present here.  Missing a single meal on three separate occasions represents a de minimus injury which did not deny Plaintiff the minimal civilized measure of life's necessities.  Beckford, 151 F. Supp. 2d at 213; Moss, 450 F. Supp. at 596-97.  While no doubt this was more than likely unpleasant, it is insufficient to establish an Eighth Amendment claim.  Accordingly, defendants' motion on this ground should be granted.

### 6. Medical Care

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  This includes the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994).  A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need.  Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66.  More than negligence is required "but less than conduct undertaken for the very purpose of causing harm."  Hathaway, 37 F.3d at 66.  The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need.  Chance v.. Armstrong, 143 F.3d 698, 702 (2d Cir.1998).  Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Farmer v. Brennan, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to

31

healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir.2003) (quoting Hudson, 503 U.S. at 9). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162–63 (2d Cir.2003) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.1998)). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir.1998). Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F.Supp.2d 303, 312 (S.D.N.Y.2001).

### a. Waldron & Berggren

Plaintiff claims that Defendants Waldron and Berggren were deliberately indifferent to

his serious medical needs when he disclosed to Defendant Waldron that he was experiencing "severe mental and emotional issues for which he had not previously been subjected to" and Defendant Waldron replied that there was nothing she could do for him. Plaintiff also claims he filed requests to see Defendant's Waldron and Berggren and was ignored. Plaintiff claims he sent requests to outside agencies as well but was met with negative responses which Plaintiff claims were fashioned to "'cover' themselves as well as the facility at Clinton."

As to Phillips' claims regarding his mental health, "treatment of mental disorders of mentally disturbed inmates is . . . a serious medical need" as contemplated by <u>Estelle</u>. <u>Guglielmoni v. Alexander</u>, 583 F.Supp. 821, 826 (D.Conn.1984). Thus, considering all of Phillips' various complaints concerning his mental health, it is clear that he has alleged facts sufficient to allege an objective medical need as a result of his mental illnesses.

Moreover, Phillips also contends that defendants have deliberately precluded him from speaking to mental health personnel by ignoring his requests and dismissing his complaints, despite his various attempts to do so. Reading the facts in the light most favorable to Plaintiff, this constitutes deliberate indifference to Phillips' mental health needs. Therefore, it is recommended that the defendants' motion on this ground be denied.

### b. Savage

Defendant Savage was walking around and Plaintiff stopped him to ask some questions regarding his mental health file. Plaintiff claims Defendant Savage told him "you know how things 'work' when it concerns you." Plaintiff also claims Defendant Savage approached him a few months later and asked if he was to come out of his cell to talk. Plaintiff claims

this was the last "bonafide interview" he received and after hearing all of Phillips' symptoms told him he may have "a legitimate anxiety issue."  Plaintiff claims Defendant Savage was deliberately indifferent to his medical need since Phillips' never had an opportunity to speak with Dr. Berggren, though Savage told Plaintiff he would.

For the same reasons as stated above, Phillips has succeeded in alleging a serious medical need.  Moreover, Savage's actions of speaking to Plaintiff, identifying that he probably needed help for a legitimate mental health need, and continuing to fail to arrange for such treatment constitutes a plausible claim of deliberate indifference.  Thus, it is recommended that defendants' motion on this ground be denied.


### c. Boudrieau & Martin

Defendants Boudrieau and Martin are jointly accused of removing Plaintiff's medically approved insoles from his boots during a security screening, which caused him blistering and "significant pain" in retaliation for a sarcastic comment made by Plaintiff to defendant Martin.

Construing Phillips' allegations as true, it appears that Phillips' has established a plausible claim that defendants acted with deliberate indifference to Phillips' unnamed medical condition.  Phillips contends that defendants intentionally interfered with his treatment by denying him use of his medically approved boot insoles.  Viewing the facts in the light most favorable to Phillips, the fact that he had medically provided insoles indicates that he received treatment from a medical professional regarding a medical need.  Accordingly, such indicates a plausibly objectively serious medical condition.  Moreover, construing the facts in the light most favorable to Phillips, defendants actions in intentionally

causing the security device to malfunction and knowingly taking away medically indicated and approved insoles indicates deliberate indifference.  Therefore, defendant's motion to dismiss on this ground should be denied.


## D. Qualified Immunity

Defendants claim that even if Phillips' constitutional claims against them are substantiated, they are nevertheless entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F.Supp.2d 211, 229–30 (N.D.N.Y.2002) (McAvoy, J.), aff'd, 80 F. App'x 146 (2d Cir.2003).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir.1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir.1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation.  Aiken, 236 F. Supp. 2d at 230.

Here, the second prong of the inquiry must only be discussed with regard to Phillips'

Eighth Amendment right to medical care and the infliction of excessive force.  It is well-settled that during Phillips' stay at Clinton, the Eighth Amendment protected an inmate from the infliction of cruel and unusual punishment, which extends to the provision of medical care (Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)) and prohibition against excessive force (Hudson v. McMillian, 503 U.S. 1, 9–10 (1992)).  Therefore, it would not be objectively reasonable to conclude that indifference to various medical conditions and excessive force would fail to violate this right.  Thus, accepting all of Phillips' allegations as true, qualified immunity cannot be granted to defendants for their alleged misconduct.  Accordingly, defendants' motion on this ground should be denied.

## E. Injunctive Relief

To the extent that Phillips requests declaratory and injunctive relief, such requests are moot as he has been transferred from Clinton and is now housed at Upstate Correctional Facility.  See Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir.1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.") (citations omitted).  Accordingly, to the extent that Phillips seeks declaratory and injunctive relief, those claims for relief should be dismissed as moot.

## III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion to dismiss (Dkt. No.33) should be:

36

1. **DENIED** as to:

    A. Phillips' Eighth Amendment excessive force claims against defendants James and Lee;

    B. Phillips' Eighth Amendment deliberate indifference claims regarding his mental health treatment against defendants Waldron, Berggren, and Savage; and

    C. Phillips' Eighth Amendment deliberate indifference claims regarding his medically approved insoles against defendants Boudrieau and Martin; and

2. **GRANTED** as to all other claims and defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldanv.Racette, 984F.2d 85, 89 (2d Cir. 1993); Small v.Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  December 2, 2013
       Albany, New York


_Christian F. Hemmel_

Christian F. Hummel
U.S. Magistrate Judge